IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 00-20540

---

IN RE DAVID EARL GIBBS,

                              Movant

---

Motion for an order authorizing the
United States District Court for the Southern
District of Texas, Houston Division, to consider
a successive habeas 28 U.S.C. § 2254 application

---

August 15, 2000

Before KING, Chief Judge, and HIGGINBOTHAM, Circuit Judge.[*]

PATRICK E. HIGGINBOTHAM; Circuit Judge:

David Earl Gibbs seeks authorization to file a successive petition for a writ of habeas corpus in the United States District Court for the Southern District of Texas, contending that his right to file a successive federal writ of habeas corpus should be measured by the cause and prejudice standard in place until April 26, 1996, the effective date of the AEDPA. We reject this argument, refuse permission to file the petition, and refuse to stay his execution now scheduled for August 23, 2000.

I

---

[*]This matter is being decided by a quorum, 28 U.S.C. 46(d).

In 1986 a jury in Montgomery County, Texas, convicted Gibbs and sentenced him to death for the rape and murder of Marietta Bryant in the course of a burglary of a habitation. The conviction and sentence have been affirmed both on direct appeal and collateral review by the Texas Court of Criminal Appeals.[1] After this review Gibbs sought federal habeas relief. The federal district court denied relief, and we affirmed that decision.[2]

Gibbs seeks to file a second petition for federal habeas to raise a single claim, not raised in his first federal petition:

> A juror's false statement, during voir dire, that she had never been the victim of a violent crime, when in fact she had been brutally kidnaped, assaulted, raped, and robbed, deprived Mr. Gibbs of his right to a fair trial and impartial jury in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

II

Our question is whether Gibbs can escape the strictures of 28 U.S.C. § 2244(b)(2), which provides that:

> (2)  A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –
>
>     (A)  the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>     (B)(i) the factual predicate for the claim could not have been discovered

---

[1] Gibbs v. State, 819 S.W.2d 821 (TEX. CRIM. APP. 1991), cert. denied, 502 U.S. 1107 (1992).

[2] Gibbs v. Johnson, 134 F.3d 253 (5th Cir. 1998), cert. denied, Gibbs v. Johnson, 119 S.Ct. 1501 (1999).

previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Gibbs concededly cannot meet (2)(B)(ii). He urges that because application of AEDPA's substantive standards "would have an impermissibly retroactive effect on him," the pre-act standards for successive writs of McCleskey v. Zant, 499 U.S. 467 (1991), should control. He argues that he could not reasonably have anticipated when filing his first federal habeas petition that his claim of juror bias would be barred by the later- enacted AEDPA standard of innocence.[3] His argument continues that he could make a prima facie showing of cause and prejudice under the McCleskey standard.[4]

The cause requirement assertedly is met by a combination of three factors: the practice then prevalent of setting an execution date to provide incentive to a prisoner to proceed with efforts to

---

[3]That standard is but for a constitutional error no reasonable fact finder would have found him guilty. (2)(B)(ii).

[4]"Some objective factor external to the defense impeded counsel's efforts" to raise the claim earlier and "actual prejudice result[ed] from the errors of which he complained." Or, in the absence of cause, "a fundamental miscarriage of justice would result from a failure to entertain the claim" as "when a constitutional violation probably has caused the conviction of one innocent of the crime." 499 U.S. at 493-94.

3

obtain habeas relief,[5] the federal requirement that a petitioner cannot bring a petition with both exhausted and unexhausted claims, and the refusal of Texas courts to entertain a petition if a request for federal relief is then pending.

Texas responds that we rejected essentially the same effort to escape the AEDPA in Graham v. Johnson, 168 F.3d 762 (5th Cir. 1999), cert. denied, 120 S.Ct. 1830 (2000); that Gibbs cannot demonstrate that he has been whipsawed from a timely assertion of the claim of juror bias in his effort to escape the innocence requirement; that he cannot meet the cause and prejudice standard of McCleskey in any event. Finally, Texas urges that the claim is procedurally defaulted and has been decided against Gibbs on its merits.

III

---

[5]The use of execution dates in the absence of time limits to create incentives for habeas petitions in death cases had its problems. But it did not foreclose Gibbs a reasonable opportunity to develop and file his pleadings. For example, The Court of Criminal Appeals affirmed the conviction and sentence on September 18, 1991, the Supreme Court denied certiorari in Gibbs's direct appeal on February 24, 1992, and Gibbs filed his first application for a state writ of habeas corpus on April 16, 1992. Indeed, the Court of Criminal Appeals denied relief on Gibbs's first writ of habeas corpus on October 12, 1994, some seven months before the days of June 1995 where he argues lack of time placed him in such a difficult circumstance. It bears emphasis that a focus on the time between a prisoner's filing and the execution date under the system then in place leads attention away from the reality that a prisoner under sentence of death had little incentive to file absent an execution date and years sometimes passed without court activity. We focus today on a short time span in the summer of 1995, but that was over nine years after Gibbs was convicted and sentenced to death.

4

We turn to the factual setting of Gibbs's claim, starting with the circumstances surrounding the filing of the first federal habeas petition.

First, the dates of filing, keeping in mind that Gibbs was tried and convicted in 1986. With execution scheduled for July 18, 1995, Gibbs filed his second state habeas petition on July 5, 1995. The Texas Court of Criminal Appeals denied the application on July 15, 1995. Gibbs filed his first federal petition on July 17, 1995, and execution was stayed on that day. Gibbs urges that on July 13, 1995, with Gibbs facing the execution date of July 18, 1995, and approximately a week after filing a second state habeas application, juror Lois Webster told Gibbs's counsel that she had been raped while a teenager. Counsel was then preparing Gibbs's federal petition in anticipation of a state denial and only four days remained before the execution date, including a Saturday and Sunday.

Texas replies that the claim could have been made in this second state petition. The contention is that the state courts found that counsel knew the factual basis for the juror bias claim as early as June 8, 1995 (when habeas counsel interviewed the juror and her husband) and at the latest on June 29, 1995, when the juror signed an affidavit, but counsel filed a state habeas claim on July 5 without including it. The state continues that Gibbs could also have amended his state petition, pointing out that the state trial judge did not enter its findings on the habeas petition until July 14. Moreover, the state says, Gibbs did not return to state court

5

for three years and eight months, days before a then scheduled execution – with the juror claim in his pocket all the while.

Gibbs rejoins that the Texas Court of Criminal Appeals implicitly rejected the factual finding by the state habeas trial court that petitioner's counsel had knowledge as early as June 8 of the factual basis of the claim of juror bias. Gibbs points to the conclusion of the Court of Criminal Appeals that the state rules for filing a successive writ were met. The contention is that under state law the successive petition could not have been filed if the factual predicate of its claims were discoverable at the time the first petition was filed, July 5, 1995.

Whether counsel had the factual predicate on June 8 or June 29 aside, the state habeas court concluded that counsel "made no attempt to investigate the matter further until February 26, 1999 . . . and presented no reasonable justification for the three year and eight month delay between his discovery of the underlying basis for this [claim] and his first attempt to investigate." This finding is not challenged. The lapse of time it finds spans the April 25, 1996, effective date of the AEDPA. It led to the holding by the Texas Court of Criminal Appeals that Gibbs's third state writ was defaulted under the common law abuse of writ doctrine. The record does not disclose if efforts to obtain the information were made in the nine preceding years. Apparently the factual predicate for the claim of juror bias came only from the information the juror volunteered in 1995.

IV

Gibbs's effort to escape the conceded bar of the AEDPA rests on a premise that he was justified in relying upon the law then in place – specifically, that the claim would not have been barred by the law defining abuse of the writ in place before the statute became effective. The effort must accept that the abuse of writ rules had been tightened considerably before the AEDPA became effective. One need not gainsay the possible difficulties to a petitioner of the combined effects of the two forum rule and the doctrine of complete exhaustion to reject the contention that their hindrance would here have constituted good cause under the pre-AEDPA law.

We are not persuaded that counsel was justified in omitting the claim of juror bias because he thought the law in effect would allow him to do so. To the point and at the least, he was at such grave risk in doing so that AEDPA cannot fairly be said to have upset his settled expectations. In the words of Graham, "The focus of our retroactivity inquiry should be on the detrimental reliance [the petitioner] placed on pre-AEDPA law and the extent to which statutory changes upset his settled expectations." 168 F.3d at 787.

Texas urges that even if he could not have included the claim in his second state filing, the two forum rule and the requirement of complete exhaustion did not prevent Gibbs from dismissing his federal habeas petition without prejudice after obtaining the stay from the federal district court, investigating the claim, and returning to state court; that Gibbs was assured of time to do so

7

because a new execution date could not have been scheduled inside of thirty days. We agree.

We also agree that after obtaining the stay of execution in July 1995, Gibbs could have added the claim of juror bias. This would have either resulted in a dismissal of the then mixed petition, or a decision on its merits. If dismissed by the federal courts, returning to state court would not have increased his risk of being found to have abused the state writ. To the contrary, it would likely have reduced it. At the least, the risk of a finding of writ abuse would not have been increased. Equally, he would have lost little that he ever had on return to federal court, a return available long before AEDPA became effective the following April. Yet, Gibbs pocketed the claim and the affidavit for over three years. As it was, the bar to the federal door aside, the Texas Court of Criminal Appeals found that Gibbs abused its state process by withholding the claim for those years.

That Gibbs's difficulties in presenting the claim of juror bias at this late date are the product of a justifiable reliance upon the law before April 26, 1996, when AEDPA became effective, is not credible.

V

The state courts also rejected Gibbs's claim of juror bias on its merits. After an evidentiary hearing, a state trial court accepted the testimony of the juror that her earlier experience as a rape victim had been suppressed in her mind; that she honestly responded to the juror questionnaire form and was not biased

8

against the defendant. Gibbs urges that we should give no deference to this factfinding by the state court because the trial judge who entered the finding of fact on behalf of the Texas Court of Criminal Appeals did not conduct the evidentiary hearing. Rather, the trial judge relied upon the transcript of hearings conducted by another judge. We have also reviewed those transcripts and find no reason there or otherwise to not accord appropriate deference to the findings of the state court. We conclude then that even if the AEDPA were not applicable, and we believe that it is, Gibbs cannot show the actual prejudice required of a successive writ before AEDPA, even if he had good cause, which he did not.

The petition to file a successive writ is denied and the request that the execution scheduled for August 23, 2000 be stayed is denied.